IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

HARRIET M. SINGLETON, )
    Plaintiff, )
)
vs. )
)
) CAFN: _____
)
GARDEN CITY, GEORGIA, )
GILBERT C. BALLARD, )
in his Official Capacity as Chief ) **Jury Trial Demanded**
of Police for the Garden City Police )
Department, and C. SCOTT ROBIDER, )
    Defendants. )

## PLAINTIFF'S COMPLAINT FOR DAMAGES

Now comes, HARRIET M. SINGLETON (hereinafter "Ms. Singleton") by and through the undersigned attorney, and hereby files this Complaint for Damages against the above-named Defendants showing this Court the following.

### PARTIES, JURISDICTION AND VENUE

1.

At all times relevant to the instant lawsuit, Ms. Singleton has lived at 212 Olmstead Place, Garden City, Georgia 31408. Thus, Ms. Singleton is a resident and citizen of Chatham County, in the State of Georgia.

2.

Garden City, Georgia (hereinafter "Garden City") is a municipal corporation and governmental entity existing under the laws of the State of Georgia and is capable of suing and being sued in its own name. Garden City may be served with process through its Mayor and/or City manager at 100 Central Avenue, Garden City, Chatham County, Georgia 31405.

3.

Defendant Gilbert C. Ballard is a municipal employee and public officer appointed by Garden City as the Chief of Police. The actions of Defendant Ballard complained of herein were carried out in his official capacity and he was at all times acting under color of state and/or local law. For purposes of this action, Defendant Ballard may be served at 100 Central Avenue, Garden City, Chatham County, Georgia.

4.

Defendant C. Scott Robider is employed by Garden City in a supervisory capacity as the Director of Code Enforcement which is an office that operates under the purview of the Garden City Police Department. For purposes of this action, Defendant Robider may be served at 100 Central Avenue, Garden City, Chatham County, Georgia.

5.

This cause of action arises from a violation of constitutional rights guaranteed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. Seq.* Since the nature of the lawsuit involves a "federal question" this Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. §1331 and other applicable laws.

6.

Since Garden City, Gilbert Ballard and Scott Robider (hereinafter collectively referred to as "the Defendants") reside within the geographical boundaries of the Savannah Division of the United States District Court for the Southern District of Georgia and since the unlawful conduct complained of occurred within the Southern District of Georgia, venue is properly laid in this Court.

## ADMINISTRATIVE REMEDIES

7.

Ms. Singleton has exhausted the administrative remedies by first filing her Title VII claims with the EEOC. Exhibit 1- Charge of Discrimination.

8.

The subject action is timely and has been filed within ninety (90) days from the date that Ms. Singleton received the EEOC's letter of dismissal and its notice granting her right to sue. Exhibit 2- EEOC's Dismissal and Notice of Rights.

9.

The Defendants have been served with a copy of the instant Summons and Complaint in the manner prescribed by law.

10.

The Defendants do not object to the method, manner or sufficiency of service.

## FACTUAL ALLEGATIONS

11.

Ms. Singleton hereby incorporates by reference Paragraphs 1 through 10 of the Complaint for Damages as if fully set forth herein.

12.

Ms. Singleton is an African American female and citizen of the United States who at all times relevant to this action was employed with Garden City as a Code Enforcement Officer and/or Community Resource Coordinator.

13.

Ms. Singleton began working for Garden City on January 5, 2010. Prior to that, Ms. Singleton was employed by the City of Savannah as a Code Enforcement Officer for more than 20 years. In that capacity, Ms. Singleton served as a Code Enforcement Supervisor for 7 years. Ms. Singleton was employed by Garden City from 2010 until December 10, 2018, the day she was terminated.

14.

Ms. Singleton has an Associate's degree in Business Administration. She is also certified in Leadership and Management (Levels I, II & III), she is an ICC Certified Inspector, among other things.

15.

At all times relevant to this lawsuit, Garden City had two officers assigned to its Code Enforcement Department. Ms. Singleton was one and the other was Officer Larry Jones, a white male.

16.

When Ms. Singleton was hired in 2010, the Code Enforcement Department was housed within Garden City's Department of Planning and Economic Development and later became part of the Zoning and Building Division. The, in or around January 2017, Code Enforcement functions and its two officers were reassigned to the Police Department.

17.

Once Code Enforcement became attached to the Police Department, Ms. Singleton's chain of command changed as well. Captain Al Jelinski was her immediate supervisor, Lieutenant Brian Hood was the head of the Administration Division and at the very top was

Defendant Gilbert C. Ballard, who was Chief of Police.

18.

Ms. Singleton consistently received positive feedback from her immediate supervisor Al Jelinski and from prior supervisors over the course of her career as a Garden City Code Enforcement Officer.

19.

Throughout Ms. Singleton's employment, she has continually sought opportunities for advancement in her career by taking advantage of various training opportunities.

20.

Ms. Singleton completed numerous hours of study, training and certification courses in her area of expertise to become more competent in her job duties and performance overall. Prior to 2018, Ms. Singleton's supervisors supported, approved and praised her for showing this level of commitment to her job.

21.

Ms. Singleton consistently received raises and pay increases following annual performance evaluations and was never demoted or disciplined for poor job performance prior to 2018.

22.

In March 2018, Captain Jelinski retired from the police department. Garden City's Police Department created a new role designated as the Director of Code Enforcement and began holding interviews. Said Director was supposed to supervise the two code enforcement officers.

23.

Of the two of them, Ms. Singleton was the only one to apply for the position. Given her

years of experience, knowledge, in-class and on-the-job training acquired during the eight years she spent in code enforcement, Ms. Singleton was more than qualified for the position.

24.

Defendant Ballard granted the position to Defendant Robider, a less qualified white male who had no prior code enforcement experience, no supervisory experience, had not passed the certification test and who had been working for the police department for one year before being promoted to supervisor.

25.

During the course of her employment, Ms. Singleton was denied several opportunities for promotion despite being qualified for the position. She was instead replaced by less qualified white males and females with less applicable educational background and less experience working for the City.

26.

Defendant Robider was appointed as Director and became Ms. Singleton's immediate supervisor in April, 2018.

27.

After Defendant Robider was hired, Ms. Singleton was instructed to train him how to conduct inspections, write up citations, communicate with residents, tag vehicles for towing and perform many other code enforcement functions.

28.

Upon taking the role, Defendant Robider created a hostile work environment for Ms. Singleton in a multitude of ways including, but not limited to: yelling and berating her in front of co-workers, making comments about her performance using the term "you people" which Ms.

Singleton interpreted as a reference to race since she was the only person of color in the department.

29.

Defendant Robider consistently gave Ms. Singleton negative reviews and marks for things that other supervisors in the department said were fine. Defendant Robider intimidated and harassed Ms. Singleton by continuously threatening to fire her over the smallest infractions, although he did not make similar threats to her co-workers.

30.

Defendant Robider made frequent comments to her or in her presence that she was "dumb", "ignorant" "lazy" and stated that she did not know how to do her job and did not have the proper education, training or credentials needed to do her job well.

31.

Defendant Robider began harassing Ms. Singleton about her whereabouts during the day and used City equipment to place her under surveillance, track and record her while she was in the field.

32.

Defendant Robider intentionally left her out of press releases, articles, write-ups and photos ops for stories about Code Enforcement even though he included himself and her white male counterpart Larry Jones in the same opportunities.

33.

In early May 2018, Chief Ballard began stating that he did not like her work performance because Defendant Robider was telling him that she was not doing enough work.

34.

In May 2018, shortly after his arrival, the police department created a rule requiring that all training requests be submitted to and approved by Defendant Robider. Defendant Robider consistently denied Ms. Singleton's requests for professional training.

35.

As a supervisor, Defendant Robider subjected Ms. Singleton unfair and unequal treatment by placing her under surveillance, placing her under undue and unfair scrutiny and treating her discourteously in comparison to her white male peers. Defendant Robider targeted Ms. Singleton's work performance by blaming and criticizing her for failing to perform tasks that her white male counterpart(s) were either not required to perform or not disciplined for.

36.

In or around May 2018, Ms. Singleton reported these instances to Lt. Brian Hood, who was Defendant Robider's supervisor. During the meeting with Lt. Hood, Ms. Singleton reported that she was being subject to discriminatory treatment based on her race. However, Lt. Hood stated that he did not believe that Defendant Robider was doing it intentionally. The meeting was concluded. No opinion, investigation or conclusion was ever reached, and Ms. Singleton's concerns were not addressed and no corrective or remedial action was taken.

37.

On or about In June 2018, after finding out that Ms. Singleton had made a complaint against him, Defendant Robider took adverse and retaliatory action against Ms. Singleton by supplementing a performance review adding negative comments to an evaluation that had already been completed by her previous supervisor.

38.

During this time, Defendant Robider's threats to fire her became more and more frequent.

39.

Ms. Singleton believed that she was being targeted by Defendant Robider because of her race and reported the discriminatory and retaliatory treatment to the City Attorney, Mr. James P. Gerrard. Mr. Gerrard thanked and encouraged Ms. Singleton to report such actions to him because he wanted to "keep this kind of thing from getting to the EEOC again" referencing a prior EEOC claim that Ms. Singleton had filed against Garden City.

40.

Attorney Gerrard did not investigate the matter, nor was any conclusion ore resolution reached.

41.

On June 14, 2018, Ms. Singleton filed a written complaint with the City's Human Resources Director Pam Franklin, a white female.

42.

Almost a month later, the City through its Human Resources Director, sided with Defendant Robider and upheld his retaliatory and discriminatory behavior, advising Ms. Singleton to either find a job elsewhere or resign.

## **CAUSES OF ACTION**

43.

Plaintiff hereby incorporates by reference paragraphs 1 through 42 of Plaintiff's Complaint for Damages as if fully set forth herein.

## Count I- Racial Discrimination, Title VII of the Civil Rights Act of 1964.

44.

Throughout the course of her employment with Garden City, Ms. Singleton was subject to disparate and discriminatory treatment which her white male counterparts were not.

45.

Ms. Singleton was denied opportunities for promotion as well as training opportunities which adversely affected her overall performance as an employee, while said privileges and opportunities were freely given to her white male counterparts.

46.

Ms. Singleton was subject to unfair and undue scrutiny as it related to the performance of her duties, while the performance – and underperformance-- of her white male counterparts went unnoticed.

47.

Defendants have subjected Ms. Singleton to ostracism, embarrassment, verbal abuse, mistreatment and accusations which was so severe, pervasive, persistent and intentional as to create a hostile work environment.

48.

As a result of such misconduct, Ms. Singleton has suffered and will continue to suffer actual damages in the form of mental anguish, emotional distress, humiliation, discouragement and anxiety as a result of Defendants' discriminatory employment practices.

## Count II- Retaliation

49.

Each time that Ms. Singleton reported the discriminatory treatment she received,

Defendants took adverse employment action against her by writing her up, becoming more hostile or terminating her. Up until the time of her termination, their retaliatory conduct grew worse and worse.

50.

Defendants have retaliated against Ms. Singleton for disclosing and reporting violations or non-compliance with the constitutional laws, regulations and regulations, specifically unequal treatment based on race.

## **Count III- Damages**

51.

Ms. Singleton is entitled to recover compensatory damages for the emotional distress and mental anguish she suffered as a result of the threats, mistreatment and hostile work environment created by Defendants. As part of her claim, Ms. Singleton also seeks back pay, front pay/lost wages, lost promotions, lost retirement and all other income and benefits she would have been entitled to had it not been for Defendants' discriminatory conduct and wrongful termination.

52.

Defendants' conduct was sufficiently willful, malicious and intentional as demonstrated by the fact that they did not conduct objective investigations of the misconduct that Ms. Singleton reported, they did not speak to witnesses, citizens, co-workers or other parties who could have corroborated her allegations, or otherwise conduct reasonable, objective investigations. Their actions reveal a conscious indifference and reckless disregard of the consequences to Ms. Singleton, her long-standing career with the City, her professional future and her previously unblemished employment history.

53.

Due to the willful, intentional and reckless conduct of Defendants, Ms. Singleton is entitled to an award of punitive damages in the amount to be determined by the enlightened conscience of the jury.

54.

Ms. Singleton is entitled to an award of attorney's fees as prescribed by law.

**WHEREFORE**, Plaintiff prays:

1. That this Complaint be filed with the Clerk of Court and that process issue according to law;

2. That Defendants be held liable for special, compensatory and punitive damages as allowed by law with added interest;

3. That Defendants be enjoined from engaging in discriminatory practices such as those alleged herein;

4. That Defendants be ordered to pay reasonable attorney's fees, expenses and costs as prescribed by law;

5. That the issues herein be tried by a jury; and

6. That this Court impose such other legal and/or equitable relief as deemed just and proper under the circumstances.

Respectfully submitted, this 9th day of May, 2019.

        **THE LAW OFFICE OF**
        **SHALENA COOK JONES, LLC**

        */s/ Shalena Cook Jones*
        Shalena Cook Jones, Esq.
        Georgia Bar No.:526846
1909 Abercorn Street        *Counsel for Plaintiff Harriett M. Singleton*

Savannah, Georgia 31401  
Tel.: (912) 501-3434  
Fax: (912) 504-3504  
Email: sjones@joneslawofc.com

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 415-2019-00312 |
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Harriett M. Singleton | (912) 844-9619 | 1960 |

Street Address: P.O. Box 1835, Savannah, GA 31418

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| GARDEN CITY POLICE DEPARTMENT | 15 - 100 | (912) 966-7777 |

Street Address: 100 Central Ave, Garden City, GA 31405

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 12-10-2018    Latest: 12-10-2018
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. I began my employment in January 2010, as a Code Enforcement Inspector. Beginning in April 2018, through October 29, 2018, Scott Robider (w/m/40's), Code Enforcement Supervisor, issued monthly disciplinary actions to me for various policy & procedure violations. On December 10, 2018, I was discharged.

II. I was told I was discharged for making an unfounded accusation against my supervisor, lying about my performance in an effort to avoid discipline for misconduct, and having a history of unsatisfactory performance which I failed to correct despite counseling.

III. I believe that I have been discriminated against because of my race, African-American, sex, female, age (56), and retaliated against for opposing a workplace action, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Dec 10, 2018    /s/ Harriett M Singleton
Date              Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

RECEIVED DEC 10 2018 EEOC SLO

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EXHIBIT 1

EEOC Form 161 (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Harriett M. Singleton<br>P.O. Box 1835<br>Savannah, GA 31418 | From: | Savannah Local Office<br>7391 Hodgson Memorial Drive<br>Suite 200<br>Savannah, GA 31406 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 415-2019-00312 | Jennifer L. Bessick,<br>Investigator | (912) 920-4488 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*/s/ Omayra Padilla*     3/4/19
Omayra Padilla, Director     (Date Mailed)

Enclosures(s)

cc:
Pamela Franklin
Director of Human Resources
GARDEN CITY POLICE DEPARTMENT
100 Central Ave.
Garden City, GA 31405

**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| HARRIET M. SINGLETON,<br>Plaintiff,<br><br>vs.<br><br>GARDEN CITY, GEORGIA,<br>GILBERT C. BALLARD, Individually<br>and in his Official Capacity as Chief<br>of Police for the Garden City Police<br>Department, and C. SCOTT ROBIDER,<br>Defendants. | CAFN: _____<br><br>**Jury Trial Demanded** |

## **VERIFICATION**

Personally before me, the undersigned officer duly authorized by law to administer oaths, appears **Harriet M. Singleton**, who states that the facts and allegations contained in the foregoing pleading **Plaintiff's Complaint for Damages** are true and correct to the best of her knowledge.

FURTHER AFFIANT SAYETH NOT.

_____
**HARRIET M. SINGLETON**

Sworn and subscribed to before me
this 9th day of May, 2019.

_____
**NOTARY PUBLIC**

My Commission expires: 5-22-22 / 10-25-2?