IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| HARRIET M. SINGLETON, | |
| Plaintiff, | CIVIL ACTION NO.: 4:19-cv-106 |
| v. | |
| GARDEN CITY, GEORGIA, et al., | |
| Defendants. | |

**O R D E R**

This action arises out of the racial discrimination and retaliation Plaintiff Harriet Singleton claims she suffered during her employment with Garden City, Georgia, as a code enforcement officer. (Doc. 1.) Plaintiff sued Garden City as well as Garden City's Chief of Police, Gilbert C. Ballard, and Garden City Police Officer C. Scott Robider for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII").[1] (Id. at pp. 1–2.) Specifically, Plaintiff asserts that Defendants created a hostile work environment through disparate and discriminatory treatment, that they discriminated against her because of her race, and that they retaliated against her in violation of Title VII. (Id. at pp. 10–11.) Plaintiff also seeks attorney's fees and punitive damages. (Id. at pp. 11–12.) Presently before the Court is a Motion for Summary Judgment, filed by all three Defendants. (Doc. 45.) Plaintiff, proceeding *pro se*,[2] filed an Affidavit in response, (doc.

---

[1] In her Complaint, Plaintiff names Chief Ballard, in his official capacity, and Officer Robider as Defendants. (Doc. 1, p. 1.) However, there is no indication that Plaintiff has served either Chief Ballard or Officer Robider as required by Federal Rule of Civil Procedure 4.

[2] Plaintiff was initially represented by counsel, who drafted and filed the Complaint on her behalf, but the Court allowed counsel to withdraw prior to the time that Defendants filed their Motion for Summary Judgment, and Plaintiff has not hired replacement counsel. (See doc. 30.)

51), and Defendants filed a Reply, (doc. 52).  In their Motion, Defendants argue that Chief Ballard and Officer Robider cannot be sued in their individual capacities and were not properly served with process, that Plaintiff failed to timely file her Complaint, and that Plaintiff's claims fail on the merits.  (Doc. 45-1.)  For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.  (Doc. 45.)  The Court **DIRECTS** the Clerk of Court to enter summary judgment in favor of Defendants and to **CLOSE** this case.

## BACKGROUND

Plaintiff, who is an African American female, has worked in code enforcement and other related jobs for around thirty years.  (Doc. 1, pp. 3–4; doc. 48-1, pp. 13–14, 20.)  In early 2010, she accepted a position as a code enforcement officer and resource coordinator with Garden City.  (Doc. 48-1, p. 20.)  After Plaintiff started working for Garden City, the code enforcement group was moved under the supervision of the Garden City Police Department.  (Id. at p. 30.)  Lieutenant Richard Hood assumed command of the code enforcement group, and in April 2018, he hired Officer Scott Robider to serve as full-time supervisor for code enforcement.  (Doc. 46, p. 1; doc. 47, pp. 2–3; doc. 48-1, p. 31; doc. 50, pp. 2–3.)

As supervisors, Lieutenant Hood and Officer Robider implemented new code enforcement policies that Plaintiff did not like, including the use of body cameras and daily activity sheets to track officers' enforcement actions.  (Doc. 48-1, pp. 31–32, 40–50, 76–79; doc. 50, pp. 2, 5.)  Furthermore, in Plaintiff's annual performance evaluation, Officer Robider noted several deficiencies in Plaintiff's work performance.  (Doc. 48-1, pp. 55–56; doc. 50, pp. 3–4, 10–12.)  Plaintiff disagreed with Officer Robider's assessments of her work and filed a complaint with Garden City's Human Resources Department claiming that, among other things, the evaluation was inaccurate and that she was being targeted for termination.  (Doc. 50, pp. 14–15.)  The Human

Resources Department concluded that the complaint was unfounded. (Id. at pp. 17–18; doc. 48-1, pp. 66–67.) Problems between Plaintiff and Officer Robider continued as Chief Ballard, Lieutenant Hood, and Officer Robider verbally addressed her job performance with her, including her failure to activate her body camera during enforcement actions and her lack of productivity. (Doc. 46, p. 4; doc. 48-1, pp. 54–55, 78–79.) Plaintiff's issues with her job performance eventually led to written discipline. (Doc. 46, pp. 4, 11, 15.) In response to the written discipline, Plaintiff provided documents and written rebuttals challenging the alleged deficiencies in her job performance. (Id. at pp. 12–13, 16–17; doc. 47, p. 5.) Chief Ballard and Lieutenant Hood later met with Plaintiff to discuss the written discipline. (Doc. 47, p. 4.) Lieutenant Hood reviewed the written rebuttals and determined that Plaintiff had simply "made excuses" for violating code enforcement policies. (Doc. 50, pp. 23–27.) With Chief Ballard's approval, Plaintiff's employment was terminated on December 10, 2018. (Doc. 1, p. 4; doc. 47, p. 5.)

Plaintiff completed and filed a Charge of Discrimination form (the "Charge") with the Equal Employment Opportunity Commission (the "EEOC"), (doc. 1, p. 14), and thereafter obtained a Dismissal and Notice of Rights letter (the "Right to Sue Letter" and, at times, the "Letter"), which stated that she had the right to file a lawsuit within 90 days of her receipt of the Right to Sue Letter, (id. at p. 15). While the EEOC mailed the Right to Sue Letter to Plaintiff at the address listed on the Charge on February 4, 2019, Plaintiff denies that she ever received it via mail. (Doc. 1, p. 15; doc 48-1, pp. 88–90.) Plaintiff claims instead that she was told by an unidentified EEOC employee (on an unspecified date) that the Letter had been sent and that, at some point thereafter, when she still had not received it, she called the employee (on an unspecified date) to inquire again about the Letter. (Doc. 48-1, p. 89.) According to Plaintiff, she ultimately obtained a copy by going to the EEOC office on an unspecified date. (Id.) Plaintiff says she never

received the Right to Sue Letter via mail because the address listed on the Charge form was incorrect. (Id. at pp. 89–91.) She is not sure, however, who is at fault for listing the incorrect address. (Id. at pp. 92–93.) During her deposition, Plaintiff initially testified that she wrote all the information on the Charge form herself, but then she later stated that she could not remember whether she or the EEOC employee filled in the address section of the Charge form. (Id. at pp. 86-87, 92–93.)

On May 9, 2019, which was 94 days after the EEOC mailed the Right to Sue Letter to her, Plaintiff filed this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Doc. 1.) In Count I, Plaintiff alleges that Defendants violated Title VII by discriminating against her on the basis of race, denying her training and promotion opportunities, and creating a hostile work environment through "ostracism, embarrassment, verbal abuse, mistreatment and accusations."[3] (Id. at p. 10.) In Count II, Plaintiff alleges that Defendants violated Title VII by retaliating against her through "adverse employment action[s]" each time she "reported the discriminatory treatment she received." (Id. at pp. 10–11.)

Defendants have filed the Motion for Summary Judgment presently before the Court, (doc. 45), and Plaintiff, proceeding *pro se*, filed an Affidavit in response, (doc. 51). Defendants then filed a Reply. (Doc. 52.)

---

[3] In her deposition, Plaintiff stated that her lawsuit is "about termination and retaliation" and not "tied to the failure" to receive a promotion. (Doc. 48-1, p. 41.) Additionally, when asked if she was asserting a claim based on a hostile work environment, Plaintiff appeared to testify that she was not bringing such a claim. (Id. at p. 61.) While Defendants assert that Plaintiff, through this testimony, "explicitly denied that she is making any claim based on denial of promotion or hostile work environment," (doc. 45-1, pp. 15–16), Plaintiff's Complaint clearly alleges such claims, (doc. 1, p. 10). Out of an abundance of caution, the Court includes those claims in its discussion below.

**STANDARD OF REVIEW**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the non-moving party only

if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted).

Additionally, in its analysis, the Court will abide by the long-standing principle that the pleadings drafted by unrepresented parties are held to a less stringent standard than those drafted by attorneys, and therefore, must be liberally construed. See Haines v. Kerner, 404 U.S. 519, 520 (1972). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); see also Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990) ("Although we must view factual inferences favorably toward the nonmoving party and pro se complaints are entitled to a liberal interpretation by the courts, we hold that a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.").[4]

## DISCUSSION

I. **Plaintiff's Failure to Serve Chief Ballard and Officer Robider**

While Plaintiff's Complaint names Chief Ballard and Officer Robider as Defendants, she apparently has yet to effect service upon either of them. Defendants raised these service deficiencies as defenses in their Answer and again in their Motion for Summary Judgment. (Doc. 8, pp. 4–5; doc. 45-1, p. 13.) Pursuant to Federal Rule of Civil Procedure 4(m), a plaintiff must

---

[4] The Court notes that while Plaintiff's Complaint was drafted by an attorney, the attorney was allowed to withdraw prior to the close of the discovery period and Plaintiff never retained replacement counsel, so she drafted her own responsive pleading to the Motion for Summary Judgment. (See doc. 30; see also doc. 24.)

6

serve a defendant within 90 days after the complaint is filed. Here, the Complaint was filed on May 9, 2019 (more than 18 months ago), yet Plaintiff has failed to serve Chief Ballard or Officer Robider with process.

Where a plaintiff fails to comply with the strictures of Rule 4, the Court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. Fed. R. Civ. P. 4(m). A plaintiff may obtain an extension of time for service of process upon a showing of good cause. Id. A plaintiff has the burden of demonstrating the existence of "good cause" justifying service outside of the deadline. Sanders v. Fluor Daniel, Inc., 151 F.R.D. 138, 139 (M.D. Fla. 1993). "To demonstrate good cause, the plaintiff must offer evidence that . . . (1) [he] has proceeded in good faith; (2) [he] has a reasonable basis for noncompliance[;] and (3) the basis for the delay was more than simple inadvertence or mistake." Durgin v. Mon, 659 F. Supp. 2d 1240, 1258 (S.D. Fla. 2009) (citing Sanders, 151 F.R.D. at 139; Prisco v. Frank, 929 F.2d 603, 604 (11th Cir. 1991); Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1130–31 (11th Cir. 2005)). Further, "[t]he serving party bears the burden of proof with regard to its validity or good cause for failure to effect timely service." Profit v. Americold Logistics, LLC, 248 F.R.D. 293, 296 (N.D. Ga. 2008) (citing Sys. Signs Supplies v. U.S. Dep't of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990)). A court may extend the deadlines contained in Rule 4 "for good cause" shown "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

Plaintiff has never requested an extension of time to serve Defendants Ballard and Robider and, thus, has made no effort to satisfy her burden of showing good cause for failing to serve them over the past year and a half. While the Court would normally consider affording Plaintiff an opportunity to demonstrate why her claims against Chief Ballard and Officer Robider should not

be dismissed for failure to properly serve them with process, such an opportunity in the present case would be futile and a needless use of time and resources. As discussed below, the present record of the case makes clear that all three Defendants are entitled to summary judgment on all of Plaintiff's claims. Accordingly, the Court declines to afford Plaintiff additional time in which to serve Chief Ballard or Officer Robider.

## II.   Individual Liability under Title VII

Chief Ballard and Officer Robider contend that the claims against them should be dismissed because Title VII does not afford relief against individual defendants, and any claims against them in their official capacities are duplicative of Plaintiff's claims against Garden City. (Doc. 45-1, p. 13.) "[R]elief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act . . . ." Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006) (citing Hinson v. Clinch Cty. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000)). Additionally, "while official-capacity suits against an employer's agents are proper, such suits are unnecessary where a plaintiff has also sued the employer." Moss v. W & A Cleaners, 111 F. Supp. 2d 1181, 1187 (M.D. Ala. 2000). "[I]f a Title VII plaintiff names his or her employer as a defendant, any of the employer's agents also named in the complaint may be dismissed from the action." Id. (citing Marshall v. Miller, 873 F. Supp. 628, 632 (M.D. Fla. 1995)); see also Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) ("We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.").

Here, Plaintiff brings Title VII claims against not only Garden City but also Chief Ballard, in his official capacity, and Officer Robider. (Doc. 1, p. 1.) Plaintiff does not specify the capacity in which she seeks to hold Officer Robider liable. (See id.) To the extent Plaintiff intended to

8

assert claims against Officer Robider in his individual capacity, those claims fail as a matter of law.  See Busby, 931 F.2d at 772 ("Individual capacity suits under Title VII are . . . inappropriate.").  Furthermore, Defendants have presented evidence, which Plaintiff has failed to rebut, that Chief Ballard and Officer Robider are employees of the City.  Thus, claims alleged against Chief Ballard and Officer Robider in their official capacities are duplicative of Plaintiff's claims against the City and, therefore, should be dismissed.  See Moss, 111 F. Supp. 2d at 1187 ("Because Plaintiffs bring their Title VII claims against [the employer], the court finds that their Title VII claims . . . against [the individual defendants] in their official capacities are redundant and unnecessary and, thus, are due to be dismissed.").  Accordingly, Chief Ballard and Officer Robider are entitled to summary judgment on all claims asserted against them.

### III.     Timeliness of Plaintiff's Complaint

Defendants further argue that this case should be dismissed in its entirety because Plaintiff has failed to satisfy her burden of showing that she timely filed her Complaint in this Court.  (Doc. 45-1, pp. 13–15.)  While Plaintiff alleged in her Complaint that she timely filed her suit and she even attached the Right to Sue Letter to her Complaint, (doc. 1, pp. 3, 15), Plaintiff failed to respond to Defendants' untimeliness argument in the Affidavit she filed in response to the Motion for Summary Judgment, (see doc. 51).

To pursue a Title VII action in federal court, a plaintiff must first establish that she filed her complaint within 90 days of her receipt of a "right to sue" letter from the EEOC.  See, e.g., Green v. Union Foundry Co., 281 F.3d 1229, 1233–34 (11th Cir. 2002) (citing 42 U.S.C. § 2000e–5(f)(1)); see also Santini v. Cleveland Clinic Fla., 232 F.3d 823, 825 (11th Cir. 2000) ("Title VII . . . actions may not be brought more than 90 days after a complainant has adequate notice that the EEOC has dismissed the Charge.").  "Once the defendant contests this issue, the plaintiff has the

burden of establishing that he met the ninety[-]day filing requirement." Green, 281 F.3d at 1234 (citing Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1010 (11th Cir. 1982)).  Whether a particular set of circumstances constitutes "receipt" for purposes of triggering the 90-day period is to be determined by district courts on a case-by-case basis. Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1341 (11th Cir. 1999).  While notification is generally *complete* when a plaintiff actually receives the right to sue letter, the plaintiff's "actual knowledge . . . that the EEOC has terminated its investigation of her claim, as evidenced by [a] request for [a right-to-sue] letter, may be sufficient to cause the time for filing to begin running within a reasonable time after written notice of [her] right to sue has been mailed." Kerr v. McDonald's Corp., 427 F.3d 947, 954 (11th Cir. 2005).  Furthermore, "[w]hen the date of receipt is in dispute, [courts] ordinarily presume that a mailing is received three days after its issuance." Robbins v. Vonage Bus., Inc., 819 F. App'x 863, 867 (11th Cir. 2020) (citing Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 148 n.1 (1984)).  "However, this presumption does not apply if the plaintiff can show that receipt of the notice was delayed 'through no fault of his own.'" Id. (quoting Lewis v. Conners Steel Co., 673 F.2d 1240, 1243 (11th Cir. 1982)).  "To establish that a delay in receipt of the notice was not his fault," a plaintiff must show that he took "reasonable steps to ensure delivery of the notice to his current address." Id. (quoting Lewis, 673 F.2d at 1243); see also Stallworth v. Wells Fargo Armored Servs. Corp., 936 F.2d 522, 524 (11th Cir. 1991) ("[A] plaintiff 'should not be heard to complain' unless the plaintiff has . . . [taken] . . . reasonable steps to ensure delivery of the notice to his current address.").

Here, Defendants contested the timeliness of Plaintiff's Complaint, as Plaintiff filed it more than 90 days after the Right to Sue Letter's mailing date.  The Letter was mailed to the address listed on the Charge on February 4, 2019.  (Doc. 1, p. 15.)  Plaintiff filed her Complaint on May

10

9, 2019, which is 94 days after the Letter was mailed. (Id. at p. 16.) Thus, Plaintiff has the burden of establishing that she met the ninety-day filing requirement. See Green, 281 F.3d at 1234.

The Court emphasizes at the outset of its analysis that Plaintiff has never provided the date that she actually obtained a copy of the Letter from the EEOC, making it impossible to determine whether the Complaint was even filed within ninety days of *that* date. (See doc. 48-1; see also doc. 51.) Additionally, Plaintiff has failed to show that she is not to blame for her failure to receive the Letter after it was initially mailed. In her deposition, Plaintiff stated that she did not receive the Letter because the mailing address listed for her in the Charge was incorrect, and her testimony indicates that the address information was likely provided first-hand by Plaintiff herself. (Doc. 48-1, pp. 86–87, 89–93 (initially testifying that she provided all the information listed on the Charge, then later stating that she could not remember whether she or an EEOC employee filled in the Charge's address section).) Furthermore, the record indicates that Plaintiff knew that a decision had been made by the EEOC and that she was supposed to have received the Letter prior to her *actual* receipt of it. (Id. at p. 89.) Plaintiff testified that she called the EEOC and was advised that the Letter had been mailed, and that she waited for some unspecified time and then visited the EEOC office to obtain a copy. (Id.) Thus, even if Plaintiff had provided the specific date on which she obtained the Letter, Plaintiff's actual knowledge that the EEOC's investigation was complete and that the Letter had been mailed may have triggered the 90-day period prior to the date Plaintiff actually obtained it. In sum, Plaintiff has completely neglected to respond to Defendants' untimeliness argument, (see doc. 51), and, as a result, she has not shown when she obtained the Letter from the EEOC office, has not argued that she is not at fault for the wrong address having been listed on the Charge, has not provided any information about when she first learned about the Letter having been issued, and has not provided any argument or information

showing that, despite all of this, she timely filed her Complaint under the circumstances. Thus, Plaintiff has failed to satisfy her burden of showing that her Complaint was timely filed under the circumstances. See Green, 281 F.3d at 1234 ("[B]ecause Green is unable to present evidence of the date of . . . receipt of the letter, or to otherwise rebut the fact that ninety-seven days elapsed from the date of mailing to the date of filing, we conclude Green has failed to satisfy his burden."); Martinez v. U.S. Sugar Corp., 880 F. Supp. 773, 777 (M.D. Fla. 1995) ("Plaintiff stated . . . that he had received the notice, but he could not remember the date on which he received it. . . . Simply put, Plaintiff has not met his burden of proof."). As a result of the untimeliness of the Complaint, the Court declines to address the merits of Plaintiff's claims. Accordingly, Defendants are entitled to summary judgment.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DISMISSES** all claims asserted by Plaintiff against all Defendants. (Doc. 45.) Accordingly, the Court **DIRECTS** the Clerk of Court to enter summary judgment in favor of Defendants and to **CLOSE** this case.

**SO ORDERED**, this 26th day of February, 2021.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA